## HAMPSON v. SMITH.
### No. 11516.

Circuit Court of Appeals, Ninth Circuit.
May 27, 1947.

James Hampson, in pro. per.

Smith Troy, Atty. Gen., State of Washington and Edward J. Lehan, Asst. Atty. Gen., for appellee.

Before GARRECHT, MATHEWS, and BONE, Circuit Judges.

GARRECHT, Circuit judge.

The appellant filed a petition for a writ of habeas corpus in the court below, alleging an illegal search, seizure, and arrest. Finding that the petitioner has never applied for a writ of error coram nobis in any court of the State of Washington and therefore has not exhausted his state remedies, the court below dismissed the petition. From the order of dismissal, the present appeal was taken, in forma pauperis.

The petition recites that in the early morning of February 21, 1940, the appellant was taken into custody by two police officers of Tacoma, Washington, at his home in Fife, Washington; that the officers displayed no warrant for his arrest; that no charge against him had been filed in any court of the State; that he was taken to the Tacoma city jail and held incommunicado without "charge or indictment" until March 5, 1940, during all of which time he was denied the right of consulting an attorney; and that he was not taken before a committing magistrate.

The petition further sets forth that the arresting officers questioned the appellant in jail for about an hour regarding an assault that had been made upon one Virginia Riffle, who had been found unconscious as a result of having been hit upon the head with a blunt instrument.

It is then alleged that the officers returned to the appellant's living quarters at Fife, where they forcibly entered and searched his room and brought back to the police station some clothing, a pair of dark trousers, a suit, an overcoat, and some shoes, the property of the appellant.

The petition alleges that, at the time the officers seized his personal property at his living quarters, they "were without a

search warrant and were without probable cause for the said search and seizure."

Prior to the trial, the appellant filed in the state court a "petition to suppress the evidence" on the grounds indicated above. The petition was denied.

The petition for a writ of habeas corpus avers that certain pieces of the clothing seized by the police officers were introduced as evidence against the appellant, over his objections, and that to meet this evidence the appellant "was required to waive his immunity guaranteed to him by both the state and federal Constitution [s], and compelled to testify against himself" at the trial in the state court. He was found guilty of murder in the first degree and was sentenced to imprisonment for life.

The appellant's petition alleges that a notice of appeal from the judgment of conviction was filed on June 29, 1940, on the appellant's behalf by two attorneys, one of whom was related to the prosecuting attorney for Pierce County, Washington, in which county the appellant's conviction was had. The petition recites that the appellant was not aware of the relationship; that the statement of facts was filed in the state Supreme Court on September 14, 1940, after the appellant's attorneys had obtained several orders extending the time; that the appellant's opening brief was filed on November 1, 1940, but that the abstract of record was not filed by the attorneys until November 14, 1940; and that "this delay of fourteen days in filing said abstract of record by said attorneys, was, nevertheless, construed to be a failure to comply with Section '(C)' of Rule XII of the Supreme Court and said appeal was dismissed without being considered on its merits." See State v. Hampson, 9 Wash.2d 278, 284, 114 P.2d 992.

The appellant alleges that the prosecutor's relative "did deliberately and willfully fail to file with the said Supreme Court the said abstract of record, and that this action was aided and abetted" by the prosecutor and his deputy.

According to the petition, an application for a writ of habeas corpus was filed in the Supreme Court of Washington, but was denied. The state Supreme Court also denied a motion to vacate the order dismissing the appeal.

In his brief, the appellant insists that the writ of error coram nobis is not, under the decisions of the Supreme Court of Washington, "available under Washington practice" and that even if it were available in general, "it is not available to the appellant under the facts of this case".

We do not agree. The Supreme Court of Washington "has impliedly recognized coram nobis as an available writ." State v. Mason, 25 Wash.2d 767, 768, 172 P.2d 207. On the other hand, it has expressed the belief that it is "the general rule, that the writ will not be issued to correct an error involving a question that has been adjudicated." State v. Armstrong, 41 Wash. 601, 603, 84 P. 584; Humphreys v. State, 129 Wash. 309, 315, 224 P. 937, 33 A.L.R. 78. Again, in the very recent case of State v. Mason, supra, at page 772, of 25 Wash.2d at page 210 of 172 P.2d the state Supreme Court has declined to decide whether or not the trial court had the power to issue a writ of coram nobis, in a case where the determination of that point was not necessary to the decision. Its language in that connection confirms our view that the precise ambit of coram nobis in the State of Washington has not yet been judicially marked: "A decision of such importance should only be made in a case where the point is in actual controversy, and is formally briefed and earnestly argued."

 To make a showing of having exhausted state remedies, it is not sufficient for the seeker of Federal relief to present a plausible argument that the state courts would probably not decide in his favor, anyway. He must make an actual attempt to obtain redress in the state courts, and must prosecute that attempt in good faith.

This point has been underlined by the Supreme Court of the United States in the recent case of Woods v. Nierstheimer, 328 U.S. 211, 216, 66 S.Ct. 996, 999, 90 L.Ed. 1177. In that case, the five-year period of limitations on the statutory substitute for the writ of error coram nobis had expired. Yet in the face of that seemingly inexorable statutory bar, the Supreme Court said: "But we do not know whether the state

336

courts will construe the statute so as to deprive petitioner of his right to challenge a judgment rendered in violation of Constitutional guarantees where his action is brought more than five years after rendition of the judgment."

■ There, the obstacle to state relief was a definite statutory bar. Here, the difficulty lies in an unsettled state jurisprudence that might arguably be construed as unfavorable to the theory of possible relief for the petitioner in the state courts. If, in the Nierstheimer case, the Supreme Court required that the petitioner should make the attempt to obtain his remedy in the state courts, can it not be argued here, a fortiori, that a possibly unfavorable line of state decisions will not excuse the appellant from making an effort to obtain relief in the courts of the State?

Paraphrasing the language of the Supreme Court of the United States, we can say that "we do not know whether the state courts will construe" their own jurisprudence "so as to deprive petitioner of his right to challenge a judgment rendered in violation of Constitutional guarantees"— if it was indeed so rendered. "We do not know whether the state courts will construe" the facts of the appellant's case in such a way as to find that they fall within an exception to "the general rule, that the writ will not be issued to correct an error involving a question that has been adjudicated."

This entire problem has been more fully discussed in Barton v. Smith, 9 Cir., 162 F. 2d 330, decided by us this day. We refer to that decision, and the many cases there cited or quoted. See also Hawk v. Jones, 8 Cir., 160 F.2d 807.

We are aware that in Hampson v. Smith, 9 Cir., 153 F.2d 417, 418–419, certiorari denied, 328 U.S. 850, 66 S.Ct. 1118, 90 L.Ed 1623, involving this same judgment and sentence, we held that, in a case of this kind, coram nobis was not available in the courts of the State of Washington, and that therefore the appellant had exhausted his state remedies. But it might be pointed out that our opinion in that case was handed down prior to the decisions in State v. Mason and Woods v. Niersheimer, supra. Those decisions compel us to modify our views as to the reach of coram nobis in the State of Washington, and as to the extent to which a petitioner for habeas corpus must have gone before he can establish that he has exhausted all state remedies.

Accordingly, the district court's order denying, without prejudice, the appellant's prayer for a writ of habeas corpus, is affirmed.